**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

**KAYLA KNIGHTEN,** individually, and on                    Case. No.
behalf of others similarly situated,                                  Hon.

               Plaintiff,

vs.

**DRURY HOTELS COMPANY, LLC**, a
Missouri Corporation,

               Defendant.

---

**COLLECTIVE AND CLASS ACTION**
**COMPLAINT AND JURY DEMAND**

      Plaintiff, KAYLA KNIGHTEN (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Class/Collective Action Complaint against Defendant DRURY HOTELS COMPANY, LLC (hereinafter "Defendant"), and state as follows:

**INTRODUCTION**

      1.    This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and for common law claims of breach of contract or (in the alternative) unjust enrichment.

      2.    Defendant is a hospitality company that operates a nationwide chain of hotels.

      3.    According to its website, Defendant operates more than 150 hotels in 26 states.

      4.    To service its customers, Defendant employs hourly, remote customer service

1

representatives (hereinafter "CSRs") throughout the country in what it internally refers to as a virtual "National Call Center."

5.      The CSRs hold a variety of internal job titles including Switchboard Operator and Sales Agent or Reservations Agent. Regardless of the internal job titles, all CSRs are subject to the same unlawful policies and procedures discussed herein. Indeed, all CSRs are similarly situated in all material aspects for purposes of the present lawsuit. Notably, in the past two years, Plaintiff has worked as both a Switchboard Operator and a Sales Agent/Reservations Agent.

6.      Defendant employs CSRs on an hourly basis, but routinely fails to compensate them for all hours worked, including all overtime hours worked, as discussed herein.

7.      In workweeks that the CSRs worked forty or more hours, Defendant's failure to compensate the CSRs for all hours worked resulted in a violation of state and federal overtime laws.  *See* 29 C.F.R. §778.315.

8.      The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous, and in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry.  *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf.

9.      One of those abuses, present in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

10.      More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day

for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.*

11.     Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

12.     Defendant requires its CSRs to work a full-time schedule, plus overtime, however, Defendant does not compensate CSRs for all work performed.

13.     Through its attendance, schedule adherence, and performance metrics, Defendant requires their CSRs to perform compensable work tasks off-the-clock before and after their scheduled shifts, during their unpaid meal periods, and at the end of their scheduled shifts.

14.     This results in CSRs not being paid for all time worked, including overtime.

15.      In the course of performing their job responsibilities, Defendant's CSRs use multiple computer networks, software programs, applications and phone systems.

16.     The time CSRs spend booting up and logging into these programs and applications before, during, and after their shifts is compensable because the programs and applications are an integral, indispensable and important part of the CSRs' work, and they cannot perform their jobs effectively without them.

17.     Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

18.     Upon information and belief, Defendant's CSRs all follow the same timekeeping process and are subject to the same relevant timekeeping, schedule adherence, performance, and attendance policies.

19.     Plaintiff seeks to represent in this action all current and former CSRs who are

3

similarly situated to each other in terms of their positions, job duties, pay structure and Defendant's violations of federal and state law.

20.     Defendant knew or should have known how long it takes CSRs to complete their off-the-clock work, and Defendant could have properly compensated Plaintiff and the putative Collective and Class for this work but did not.

21.     Defendant knew or should have known that CSRs, including Plaintiff, worked overtime hours for which they were not compensated.

22.     Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make them, the Collective and Class whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## <u>JURISDICTION</u>

23.     This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

24.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

25.     Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

26.     This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in

4

excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

27.     Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.

28.     Defendant's CSRs, including Plaintiff, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis, by virtue of their regular and routine use of phone lines in the performance of their job duties.

29.     Defendant simultaneously operates in two or more states, and so operated at all times relevant hereto.

30.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

31.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

32.     This Court has personal jurisdiction over Defendant because it conducts business within the state of Missouri, has its principal place of business and headquarters in Missouri, is registered with the Missouri Secretary of State and employs individuals within the state of Missouri.

33.     This Court also has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting activities in the state of Missouri, has established minimum contacts sufficient to confer jurisdiction over it and has its principal place of

business in this District and Division; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## VENUE

34.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts substantial business activities within this District and maintains its principal place of business in this District.

## PARTIES

35.     Plaintiff Kayla Knighten is a Missouri resident who worked for Defendant as a remote CSR in Missouri within the last two years.

36.     As stated above, during her employment with Defendant, Plaintiff worked in multiple CSR positions in Defendant's National Call Center, including Switchboard Operator and Sales Agent/Reservations Agent.

37.     Defendant paid Plaintiff for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of $18.09 per hour.

38.     Plaintiff signed a consent to join this collective action lawsuit. **Exhibit 1**, Knighten Consent to Join.

39.     Defendant is a Missouri Limited Liability Company (Charter No. FL0927397), with its principal place of business located at 13075 Manchester Road, Ste. 100, Saint Louis, Missouri 63131-1836.

## GENERAL ALLEGATIONS

40.      Defendant employed Plaintiff as remote CSR from Plaintiff's home offices within

the last two (2) years.

41.     Defendant's CSRs are responsible for, among other things: (a) booting up their computers and logging into several essential computer software programs and applications, as well as Defendant's phone system, before fielding phone calls; (b) taking in-bound calls from and making out-bound calls to individuals who need assistance; (c) ensuring that every call is documented and accounted for in Defendant's system; (d) reading emails daily with work instructions; and (e) logging out of the computer software programs and applications and the hard phones and shutting down their computers.

42.     Defendant's CSR jobs are hourly, non-exempt positions with rigid schedules that require CSRs, including Plaintiff, to work at least eight (8) hours per day, on average five (5) days each week, and up to forty (40) hours or more in a workweek.

43.     Indeed, Defendant required Plaintiff and all other CSRs to review and acknowledge (with a signature) that the CSR position "requires ability to work in a seated position for a period of 8 hours, ability to hear using a headset, [and the] ability to read a computer screen and operate a computer for an extended period of time."

44.     Defendant's offer letter to Plaintiff stated "[y]ou will be classified as a non-exempt hourly team member and compensated on an hourly basis at a rate of $13.71 per hour plus overtime for hours worked over 40 in a work week."

45.     The CSRs' schedules result in many CSRs routinely working unpaid overtime.

46.     Throughout their employment with Defendant, Plaintiff was required to work a substantial amount of unpaid time, including overtime, as part of her role as a CSR.

47.     At all relevant times, Defendant controlled their CSRs' work schedules, duties,

protocols, applications, assignments, and employment conditions.

48.     Defendant was also responsible for training and continuing their CSRs' education in their role as CSRs.

49.     Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications, and phone systems.

50.     These programs, applications, and systems are integral and an important part of the CSRs' work, and they cannot perform their jobs without them.

51.     Defendant's CSRs all follow the same timekeeping process, are subject to the same relevant timekeeping, and attendance policies, and are subject to quality assurance reviews (performance metrics) based on the same or similar criteria.

52.     Defendant instructs and trains CSRs to have all their computer networks, software programs, and applications open and ready at the start of their scheduled shifts, and before they can log into Defendant's phone system to begin taking phone calls and before they clock in.

53.     According to Defendant's written "Shift Responsibilities and Reminders" policy, CSRs "may clock in for [their] shift no more than 2 minutes before the start of [their] shift."

54.     Additionally, Defendant's written "Shift Responsibilities and Reminders" policy requires that CSRs "be ready to take your first call when your shift begins."

55.     According to Defendant's attendance policy for CSRs, "[t]he expectation is that you are clocked in and logged into the phones ready to take calls by your scheduled start time."

56.     Furthermore, Defendant's "National Call Center Policy Summary" states, "[a] tardy is defined as failure to be at work at the time your shift begins as indicated by the posted work schedule."

57.     Additionally, under Defendant's uniform written attendance policies, CSRs incur an "Unofficial Tardy" for "clocking in 1 minute up to 6 minutes after the scheduled start of [their] shift and at the scheduled end of [their] lunch period." Further, "6 unofficial tardies at 90 days nullifies the pay raise" and "are considered part of your performance rating and are strongly considered for growth opportunities in our department."

58.     Stated differently, under Defendant's written attendance and timekeeping policies, CSRs may clock-in no more than two minutes before the start of their shift and must be call-ready at the start of their scheduled shift.

59.     These uniform policies obviously foster significant off-the-clock work, as CSRs must engage in a cumbersome process of booting up their computers, connecting to networks, loading and logging into computer programs, and reviewing emails with work instructions before the start of every shift.

60.     As a result, CSRs are forced to begin loading and logging into their computer systems well before clocking in.

61.     Defendant's attendance policy is a no-fault attendance policy, meaning points are assessed to the CSR regardless of whether the tardy/absence is justified.

62.     By virtue of its written policies, Defendant pressures CSRs to load and log-into their required computer systems *before* clocking into the timekeeping system, Kronos/Workday.[1]

63.     Furthermore, Defendant's scoring guidelines measure a CSRs' ability to adhere to mandatory protocols and are comprised of various performance metrics, including but not limited

---

[1] During the relevant time frame, Defendant switched timekeeping systems from Kronos to Workday.

to the CSRs' complete and correct resolution of issues and inquiries.

64.    These performance metrics necessarily require that CSRs be logged into all computer programs, applications and systems, and have all reference materials and available resources open at the time of the call.

65.    Indeed, Defendant enforces their policy of requiring all computer networks, programs and applications be open and ready before clocking in, through their other performance metrics and schedule adherence policies.

66.    Failing to accurately account and pay for all of the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

67.    Because CSRs are prohibited from including all hours worked in their time recorded, Defendant's compensation policy and system fails to properly account and compensate them for all time worked, including their overtime hours, each day and each workweek.

68.    Thus, the hours reflected on the CSRs' pay stubs are inaccurate and contrived by Defendant.

69.    In fact, as outlined below, Defendant maintains a common plan and policy pursuant to which they fail to pay their CSRs for no less than fourteen (14) minutes per day of work performed during pre- and post-shift time and during their lunch periods.

70.    This time could easily be recorded, accounted for, and paid, but Defendant chose not to credit such time as time worked.

A.    Pre-Shift Off-the-Clock Work

71.    In addition to their regularly scheduled shifts, and as mentioned above, Defendant's CSRs perform pre-shift work tasks for which they are uncompensated.

72.     Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required to start up and log into various secure computer programs, software programs and applications in order to perform their jobs.

73.     The pre-shift startup and login process takes substantial time on a daily basis with said time averaging ten (10) to fifteen (15) minutes per day, and the tasks can take longer if CSRs experience technical problems with the computer, software, and/or applications. Any argument that these activities could be completed within (2) two minutes is completely untenable.

74.     Prior to the commencement of each scheduled shift, Plaintiff, as well as the other CSRs, was required to perform a cumbersome and time-consuming process to become call ready and clock in. The process began when the CSRs turned on the computer, waited for Windows to load, then entered a username and password to log into windows. Next, the CSRs were required to load, log-in using a dual-authentication process, then connect to Defendant's virtual private network (VPN), which took several minutes.[2] Once connected to the VPN, CSRs must load and log into several essential work programs including: Microsoft Teams, Sharepoint, Defendant's messaging system, the e-mail application, several of Defendant's websites, reservations screens, and Genesys.

75.     The off-the-clock pre shift computer bootup time from one project to the next was the same – approximately ten (10) to fifteen (15) minutes.

76.     The aforementioned tasks are an integral and essential aspect of a CSR's job duties

---

[2] A dual factor authentication log-in process requires an individual to receive a code to their cell phone (in this case through an application called "Duo"), then after receiving the code on their cellphone, input the same into the computer. This process is inherently more time consuming than single factor authentication.

and responsibilities. CSRs must have all of the above-referenced computer programs, systems, and applications up and running on their computers in order to be prepared to accept incoming calls.

77.     Defendant fails to compensate CSRs for the computer boot up tasks.

78.     Instead, as discussed above, Defendant maintains attendance, adherence, and performance policies that require them to be call-ready at the start of their scheduled shift and within two minutes of clocking in.

79.     Further, Defendant deems clocking in more than five minutes before the start of a shift as call avoidance, despite the fact the aforementioned bootup process takes *at least* ten minutes at the start of each shift.

80.     Prior to the start of their scheduled shifts, Defendant also requires CSRs to read emails with work instructions and announcements for the day, which further pressures them into performing off-the-clock work.

81.     As a result, Defendant maintains a common plan and policy pursuant to which they fail to pay CSRs for no less than ten (10) minutes per day of work performed in connection with the above pre-shift activities.

### B.     Meal-Period Off-the-Clock Work

82.     Defendant provides their CSRs with one unpaid hour lunch break per shift.

83.     However, the CSRs do not receive the full lunch period because Defendant routinely requires CSRs to perform work during their unpaid lunch breaks.

84.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be <u>*completely relieved*</u> from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

85. Defendant does not provide CSRs with a bona fide meal period because its policies and procedures require CSRs to return from their lunch early to perform at least part of the boot up process outlined above.

86. In fact, several of the programs utilized by CSRs automatically log them out if they are idle for more than a few minutes (at lunch), which requires them to undergo some or all the bootup process outlined herein.

87. On most days, CSRs spend approximately one (1) to two (2) minutes performing this computer bootup work during their unpaid meal breaks on most days, however, such time is even greater, when CSRs are required to do a complete reboot.

88. Defendant's management is aware that this was Plaintiff's and other CSRs' practice to perform these tasks off the clock, and could have paid CSRs for this time, but did not.

89. On other days, Defendant's management required CSRs to take lunch breaks that were significantly shorter than thirty (30) minutes in order to address high call volume and other business needs.

## C.   Post-Shift Off-the-Clock Work

90.   Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required at the end of each shift to log out of the essential computer software programs and

13

applications utilized during their shifts.

91.     The shutdown and logout process requires another three (3) to five (5) minutes of off the clock work per shift.

92.     Pursuant to Defendant's policies, training and direction, Plaintiff and the other CSRs are not allowed begin the shutdown and logout process until their scheduled shift ends and they complete their last fielded call.

93.     Defendant did not compensate CSRs for all the time spent shutting down and logging out of their essential work systems.

94.     The unpaid off-the-clock work performed after each shift by Plaintiff and all other CSRs directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

95.     In fact, CSRs are required to sign a Tech Usage Policy, which provides instructions and information on how to securely shut down and store computers to protect sensitive information of the Defendant, its clients, and its employees. CSRs who violate Defendant's Tech Usage Policy are subject to discipline, up to and including termination.

      **D.**    **Exemplary Pay-Period to Illustrate Pre-Shift, Meal-Period and Post-Shift Compensation Deficiencies**

96.     An example of a specific workweeks where Defendant failed to pay Plaintiff all overtime due for hours worked in excess of forty (40) hours, as mandated by the FLSA, includes the following:

**Pay Period of April 1, 2024 to April 14, 2024**

- Plaintiff was paid at a rate of $18.09 per hour for the 78.2 regular hours and $27.14 per hour for 0.50 overtime hours Defendant credited her with as having worked.

- With unpaid pre-shift, meal-period, and post-shift time, in a range of fourteen (14) to twenty two (22) minutes per shift, at five shifts per week, Plaintiff should have been paid an additional seventy (70) to one hundred ten (110) minutes at her overtime rate of $27.14 during the overtime workweek.

## E.   Defendant Benefitted from the Uncompensated Off-the-Clock Work

97.     At all relevant times, Defendant directed and directly benefitted from the work performed by Plaintiff and similarly situated employees in connection with the above-described pre-shift, meal-period and post-shift activities performed by CSRs.

98.     At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of their CSRs.

99.     At all relevant times, Defendant was able to track the amount of time CSRs spent in connection with the pre-shift, meal-period, and post-shift activities.

100.    Defendant failed to do so and failed to compensate CSRs for the off-the-clock work they performed.

101.    At all relevant times, CSRs were non-exempt hourly employees, subject to the requirements of the FLSA.

102.    At all relevant times, Defendant used their attendance, adherence, performance, and timekeeping policies against the CSRs in order to pressure them into performing the pre-shift, meal-period, and post-shift off-the-clock work.

103.    Defendant expressly trained and instructed CSRs to perform the above-described pre-shift activities *before* the start of their scheduled shifts, to ensure they were prepared to take calls (i.e., were "phone ready") the moment their shifts began.

104.    At all relevant times, Defendant's policies and practices deprived CSRs of wages owed for the pre-shift, meal-period, and post-shift activities they performed.

105. Because Defendant's CSRs often worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay in many workweeks.

106. Defendant knew or should have known that the time spent by CSRs in connection with the pre-shift, meal-period, and post-shift activities was compensable under the law.

107. In light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they acted in good faith.

108. Despite knowing CSRs performed work before and after their scheduled shifts and during their unpaid meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work, and instead suffered and permitted it to happen.

109. Unpaid wages related to the off-the-clock work described herein are owed to CSRs at the FLSA mandated overtime premium of one and one-half times their regular hourly rate because CSRs regularly worked in excess of forty (40) hours in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

110. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of:

> *All current and former hourly CSRs who worked for Defendant in the United States at any time during the three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

111. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated CSRs.

112. Consistent with Defendant's policy and pattern or practice, Plaintiff and the

members of the FLSA Collective were not paid for all premium overtime compensation when they worked beyond forty (40) hours in a workweek.

113.    Defendant assigned and/or was aware of all of the work that Plaintiff and the members of the FLSA Collective performed.

114.    As part of its regular business practices, Defendant intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective.

115.    This policy and pattern or practice includes, but is not limited to:

    a.    Willfully failing to pay their employees, including Plaintiff and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek; and

    b.    Willfully failing to record all of the time that their employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant;

116.    Defendant is aware or should have been aware that federal law requires them to pay Plaintiff and the members of the FLSA Collective overtime premiums for all hours worked in excess of forty (40) per workweek.

117.    Defendant's unlawful conduct has been widespread, repeated, and consistent.

118.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b).

119.    The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual

and legal theories.

120.    The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay.

121.    The key issues – the amount of uncompensated pre-shift start-up/log-in time, unpaid meal period time, and the amount of post-shift shut down/log out time owed to each employee – do not vary substantially among the proposed FLSA Collective members.

122.    Many similarly situated current and former CSRs in the FLSA Collective have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

123.    Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

124.    Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

125.    Plaintiff estimates that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds, if not thousands, of workers.

126.    The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 CLASS ACTION ALLEGATIONS

127.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> *All current and former hourly CSRs who worked for Defendant in the United States at any time during the three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "Rule 23 Class").  Plaintiff reserves the right to amend this definition as necessary.

128.    The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical.  Plaintiff reasonably estimates there are thousands of Rule 23 Class members.  Rule 23 Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

129.    There is a well-defined community of interest among members of the Rule 23 Class and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions, include, but are not limited to, the following:

  a.    Whether the pre-shift time that Rule 23 Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;

  b.    Whether the time that Rule 23 Class members spend on work activities during their lunch break, such as logging back into computer systems and clocking in is compensable time;

  c.    Whether the time that the Rule 23 Class members spend on work activities after they clock out, such as logging out of computer systems and shutting down the computer is compensable time; and

  d.    Whether Defendant's failure to pay the Rule 23 Class members for this pre-, mid- and post-shift time at their agreed upon rate constitutes a breach of contract and whether Defendant was unjustly enriched;

130.    Plaintiff's claims are typical of those of the Rule 23 Class in that she and all other members Rule 23 Class suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.  Plaintiff's claims arise from the same pay policies, practices, promises, and course of conduct as all other members of the Rule 23 Class

19

claims and their legal theories are based on the same legal theories as all other members of the Rule 23 Class.

131.    Plaintiff will fully and adequately protect the interests of the Rule 23 Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

132.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for members of the Rule 23 Class to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

133.    This case will be manageable as a Rule 23 class action. Plaintiff and her counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

134.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

135.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as

a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**
**VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.**
**FAILURE TO PAY OVERTIME WAGES**

136.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

137.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

138.    At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

139.    Plaintiff and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

140.    Plaintiff and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

141.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

142.    At all times relevant to this action, Defendant required Plaintiff and the FLSA Collective to perform no less than fouteen (14) to twenty (20) minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

143.    In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime, should

21

have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

144.    Defendant's violations of the FLSA were knowing and willful.

145.    Defendant knew or could have determined how long it takes its CSRs to perform their off-the-clock work.

146.    Further, Defendant could have easily accounted for and properly compensated Plaintiff and the FLSA Collective for these work activities, but did not.

147.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Rule 23 Class Action)**
**Breach of Contract**

148.    Plaintiff realleges and incorporates all previous paragraphs herein.

149.    This Count applies only to workweeks were the FLSA's overtime protections are inapplicable (less than 40 hours).

150.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other member of the Rule 23 Class to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiff and the Rule 23 Class members performed on Defendant's behalf.

151.    Defendant's contractual promises to pay Plaintiff and each member of the Rule 23 Class's applicable hourly rate is evidenced by, among other things, each pay stub issued to Plaintiff and the members of the Rule 23 Class.

152.     Additionally, Defendant provided Plaintiff and each member of the Rule 23 Class with a written offer that expressly established a specified hourly rate for each hour work and the services to be performed by Plaintiff and the Rule 23 Class members in exchange for the promised hourly pay. As explained above, inclusive and inherent in the essential job duties of a CSR was the process of loading and logging into the computer systems and securely logging out and shutting down the computer.

153.     Upon information and belief, each member of the Rule 23 Class, including Plaintiff, is paid on an hourly rate.

154.     Plaintiff and every other Rule 23 Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid, off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with pre-shift and meal period activities, described herein.

155.     By not paying Plaintiff and every other Rule 23 Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Class.

156.     On occasion, CSRs, including Plaintiff, missed time from work causing them to work under 40 hours in a given week.

157.     To the extent there is no other state law remedy available, Plaintiff's and the members of the Rule 23 Class's remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less

than the promised hourly rate for all hours under 40 hours per week.

158.    As a direct and proximate result of Defendant's contractual breaches, Plaintiff and every other member of the Rule 23 Class have been damaged (to the extent there is no other state law remedy) in amount to be determined at trial.

## COUNT III
### (Rule 23 Class Action)
### Unjust Enrichment

159.    Plaintiff re-allege and incorporate all previous paragraphs herein, except those paragraphs that assert a binding contract existed.

160.    This Count is pled in the alternative to Count II, supra, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

161.    This Count applies only to workweeks were the FLSA's overtime protections are inapplicable (less than 40 hours).

162.    At all times relevant to this action, Defendant promised Plaintiff and every other member of the Rule 23 Class a pre-established regular hourly rate in consideration of the work duties Plaintiff and the members of the Rule 23 Class performed for the benefit of Defendant.

163.    Plaintiff and every other member of the Rule 23 Class relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

164.    By not paying Plaintiff and every other member of the Rule 23 Class the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

165.    Plaintiff and the members of the Rule 23 Class performed off-the-clock work tasks

at the request of and without objection by Defendant.

166.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every member of the Rule 23 Class and enjoyed the benefits derived therefrom.

167.    Upon information and belief, Defendant used the monies owed to Plaintiff and every other member of the Rule 23 Class to finance its various business ventures or pay its equity owners.

168.    Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the members of the Rule 23 Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Class for the same.

169.    Plaintiff and the Rule 23 Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

170.    As a direct and proximate result of Defendant's actions, and to the extent there is no other state law remedy available, Plaintiff and every other member of the Rule 23 Class suffered damages, including but not limited to, loss of wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf, on behalf of the putative FLSA Collective, and the Rule 23 Class respectfully requests judgment as follows:

a.    Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    Certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's state law claims for common law breach of contract and unjust enrichment (Counts II and III);

c.  Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and the members of the Rule 23 Class, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Class members of their rights by law to join and participate in this lawsuit;

d.  Designating Plaintiff as the representative of the FLSA collective action and the Rule 23 Class, and undersigned counsel as Class counsel for the same;

e.  Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

f.  Declaring Defendant's violation of the FLSA was willful;

g.  Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the collective action Class and the Rule 23 Class the full amount of damages and liquidated damages available by law;

h.  Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

i.  Awarding other pre- and post-judgment interest to Plaintiff on these damages; and

j.  Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: May 13, 2024                     Respectfully Submitted,

**KENNEDY HUNT, P.C.**
***/s/ Sarah Jane Hunt***
Sarah Jane Hunt, #63899
4500 West Pine Blvd.
St. Louis, MO 63108
Phone: (314) 372-9041

Fax: (314) 872-9043
sarahjane@kennedyhuntlaw.com

**ASH LAW, PLLC**
Charles R. Ash, IV (MI Bar No. P73877)
(Pro Hac Vice *Forthcoming*)
402 W. Liberty St.
Ann Arbor, MI 48103-4388
Phone: (734) 234-5583
cash@nationalwagelaw.com

**HOOPER HATHAWAY, P.C.**
Oscar Rodriguez (MI Bar No. P73413)
(Pro Hac Vice *Forthcoming*)
126 S. Main St.
Ann Arbor, MI 48104-1903
Phone: (734) 662-4426
orod@hooperhathaway.com

*Counsel for Plaintiff and the*
*Putative Collective/Class Members*