# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| KAYLA KNIGHTEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:24-cv-00666-SEP |
| ) | |
| DRURY HOTELS COMPANY, LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Before the Court are Plaintiff's Unopposed Motion for Settlement Approval, Doc. [26] and Plaintiff's Joint Motion to Amend Proposed Settlement Notice, Claim Form, and Order, Doc. [30]. For the reasons set forth below, both motions are granted.

## BACKGROUND

On May 13, 2024, Plaintiff filed a complaint alleging violations of the Fair Labor Standards Act and common laws claim of breach of contract, or in the alternative, unjust enrichment. *See* Doc. [1]. The Complaint alleged that Defendant failed to pay its remote customer service representatives (CSRs) for the time spent logging into and out of the programs and applications required to perform their job duties.

On June 26, 2024, the parties filed a Joint Motion to Stay Litigation and Toll the FLSA Statute of Limitations to Allow the Parties to Attend Mediation. Doc. [16]. The parties informed the Court that they "agreed to submit the case to mediation after completion of informal discovery process . . . ." *Id.* at 1. The Court granted the motion. Doc. [17]. The parties engaged in discovery and, on October 11, 2024, attended a mediation in Nashville, Tennessee. Doc. [26] at 5. Soon thereafter, the parties notified the Court that they had reached a settlement in principle. Doc. [21]. Plaintiff now moves the Court to approve the settlement agreement. Doc. [26]. Defendant does not oppose.

The terms of the parties' settlement agreement are fully set forth in the briefs and exhibits and will not be fully repeated here. In summary, under the proposed settlement, a common fund of $290,000.00 will be established. *See* Doc. [26-1]. After deducting attorneys' fees, litigation costs, settlement administration costs, and the collective representative award, $162,775.46 will

be made available to "all current and former Customer Service Representatives who worked for Drury's National Contact Center in the United States at any time during the three years preceding June 28, 2024, and who were amongst the 292 employees identified in the data productions produced by Drury to Named Plaintiff on August 29, 2024" ("Settlement Collective Members"). *Id.*

## DISCUSSION

Plaintiff requests that the Court (1) certify the case for settlement purposes as an FLSA collective action; (2) approve the settlement; (3) approve the settlement procedure and structure; (4) approve the collective representative service award; and (5) approve the fees and costs of the settlement administrator and attorneys.

**I.       The case is certified as a collective action under the FLSA for settlement purposes.**

"A collective action under the FLSA to recover overtime compensation and liquidated damages may be maintained 'by any one or more employees for and [on] behalf of himself or themselves and other employees similarly situated.'" *Johnson v. Himagine Sols., Inc.*, 2021 WL 2634669, at *3 (E.D. Mo. June 25, 2021) (quoting 29 U.S.C. § 216(b)). "Unlike a Rule 23 class action, a collective action under the FLSA is pursued on an opt-in basis, requiring employees to provide their consent in writing to join the action." *Id.* (citing *Brown v. Reddy ICE Corp.*, 2016 WL 2930933, at *1 (E.D. Mo. May 19, 2016)).

The FLSA does not define "similarly situated," but "district courts generally have applied a two-step approach by which named plaintiffs first seek conditional certification to facilitate notice to the proposed class; then, typically after the close of the opt-in period and discovery, the defendant may move to decertify the collective action if the record reveals that the opt-in plaintiffs are not similarly situated." *Davenport v. Charter Commc'ns., LLC*, 2017 WL 878029, at *8 (E.D. Mo. Mar. 6, 2017)*; see also Getchman v. Pyramid Consulting, Inc.*, WL 713034, at *4 (E.D. Mo. Feb. 23, 2017) (collecting cases applying the two-step approach); *Cupp v. MHM Health Pros., LLC*, 2024 WL 549974, at *2 (E.D. Mo. Feb. 12, 2024) (applying the two-step approach while acknowledging the Fifth and Sixth Circuits had recently rejected it).

The burden at the first stage is "not onerous" and "requires 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan.'" *Getchman*, 2017 WL 713034, at *4 (quoting *Davis v. NovaStar Mortg., Inc.*, 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005)). "The second step is the 'merits stage' and occurs when

the defendant moves to decertify the class, typically after the close of discovery." *Brown*, 2016 WL 2930933, at *2 (citing *Bilskey v. Bluff City Ice, Inc.*, 2014 WL 320568, at *2 (E.D. Mo. Jan. 29, 2014)). At the merits stage, the Court "'makes a factual determination on the similarly situated question.'" *Brown*, 2016 WL 2930933, at *2 (quoting *Wilson v. PNK (River City), LLC*, 2015 WL 5098716, at *2 (E.D. Mo. Aug. 31, 2015)). "In deciding whether the plaintiffs are similarly situated, a court considers several factors, including (1) the extent and consequences of disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) other fairness and procedural considerations." *Id.* (quoting *Brennan v. Qwest Commc'ns Int'l, Inc.*, 2009 WL 1586721, at *3 (D. Minn. June 4, 2009)). "Where, as here, the plaintiffs did not move for conditional certification before they agreed to settle the case, the Court may consider both steps at the same time." *Johnson*, 2021 WL 2634669, at *3; *see, e.g.*, *Shackleford v. Cargill Meat Sols. Corp.*, 2013 WL 209052, at *2 (W.D. Mo. Jan. 17, 2013).

Plaintiff points to commonalities among the Settlement Collective Members that render them similarly situated: All worked remotely, were "paid on an hourly basis, utilized the same essential computer programs and computerized timekeeping system, and [were] allegedly subject to the same unlawful policies that resulted in off-the-clock work related to their computer bootup and shutdown activities." Doc. [26] at 15. "[F]airness and procedural considerations," Plaintiff argues, "including the number of similarly situated employees included in the Settlement Collective (292) and the effectiveness of allowing them to join in the litigation to participate in a common fund settlement, also weigh in favor of collective action treatment." *Id.* at 15-16. The Court agrees and certifies this case as a collective action under the FLSA for settlement purposes.

**II.    The litigation involves a bona fide dispute, and the proposed settlement is fair and equitable to all parties.**

"A district court may only approve a settlement agreement in a case brought under § 216(b) of the FLSA after it determines that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties." *Pendergrass v. Bi-State Utils. Co.*, 2019 WL 3532005, at *1 (E.D. Mo. Aug. 2, 2019) (quoting *Williams v. BPV Mkt. Place Invs., L.L.C.*, 2014 WL 5017934, at *1 (E.D. Mo. Oct. 7, 2014)). "A settlement is bona fide if it reflects a reasonable compromise over issues actually in dispute, since employees may not waive

3

their entitlement to minimum wage and overtime pay under FLSA." *King v. Raineri Constr., LLC*, 2015 WL 631253, at *2 (E.D. Mo. Feb. 12, 2015) (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 115 (1946)).

Plaintiff points to several bona fide disputes between the parties, including disputes relative to "the number of hours worked by the Settlement Collective; the wages (including overtime wages) owed; the compensability of the alleged unpaid work under Plaintiff's theories of liability; and the suitability of this case for class and collective treatment." Doc. [26] at 16. According to Plaintiff, "Defendant denies any off-the-clock work occurred, and to the extent that it did, the time was not compensable because Defendant could not have reasonably known it was occurring or because the time was *de minimis*." *Id.* Furthermore, in the event the litigation continues, Defendant would oppose any effort by Plaintiff to certify a class or collective. *Id.* Accepting Plaintiff's uncontested characterizations of Defendant's litigating positions, the Court is satisfied that a bona fide dispute exists between the parties.

To determine whether a settlement is fair and equitable, the Court considers:

> the stage of the litigation and amount of discovery exchanged, the experience of counsel, the probability of plaintiffs' success on the merits, any 'overreaching' by the employer in the settlement negotiations, and whether the settlement was the product of arm's length negotiations between represented parties based on the merits of the case.

*Tanner v. Empire Fin., Co.*, 2020 WL 7316115, at *1 (E.D. Mo. Dec. 11, 2020) (quoting *King*, 2015 WL 631253, at *2). "In reaching a determination, courts 'should be mindful of the strong presumption in favor of finding a settlement fair.'" *Id.* (quoting *Crabtree v. Volkert, Inc.*, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013)).

The first factor—the stage of the litigation and amount of discovery exchanged—weighs in favor of approving the settlement. While the parties did not conduct formal discovery, Defendant voluntarily produced "all of the payroll and time data for the putative class members" and "hundreds of pages of written employment policies and training materials." Doc. [26] at 18; *see* Doc. [26-2] ¶ 16. To synthesize and review the data produced by Defendant, Plaintiff retained an expert forensic accountant and damages expert. Doc. [26] at 5; *see* Doc. [26-2] ¶ 20. The Court is convinced that the parties "exchanged sufficient information to evaluate their claims and to allow the parties to engage in meaningful settlement discussions . . . ." *Netzel v. W. Shore Grp., Inc.*, 2017 WL 1906955, at *5 (D. Minn. May 8, 2017).

The second factor—the experience of counsel—also favors approval. Plaintiff's counsel are experienced in litigating complex class and collective actions. *See* Docs. [26-2] ¶¶ 4-8; [26-3] ¶¶ 3-5. Plaintiff's lead counsel, Charles R. Ash, IV, devotes his entire practice to assisting workers in recovering unpaid wages in class and collective actions, and has "litigated approximately 40 (forty) class/collective action wage and hour cases involving call center workers in federal courts across the country." Doc. [26-2] ¶ 8.

The third factor—probability of success on the merits—weighs in favor of approval. While Plaintiff "remains confident she will prevail on her claims on a class," she notes the risk inherent in any litigation as well as those specific to this case, including "significant risks regarding the merits of the claims, the alleged willfulness of the violations, Defendant's knowledge of the unreported off-the-clock work, and collective/class certification." Doc. [26] at 19. Considered in light of such risks, the settlement amount represents a reasonable resolution of the claims.

The fourth and fifth factors—any "overreaching" by the employer in the settlement negotiations, and whether the settlement was the product of arm's length negotiations between represented parties based on the merits of the case—also weigh in favor of approving the settlement. Both parties have been represented by experienced counsel of their choice throughout the litigation, and there is no evidence of overreaching by Defendant. Also, "the fact that the parties reached this settlement after a mediation conference with an experienced wage and hour mediator suggests an absence of overreach." *Johnson*, 2021 WL 2634669, at *5.

Finding that all relevant factors favor approval, the Court approves the settlement, finding it fair and equitable.

### III. The collective representative service award is approved.

The Settlement Agreement provides that the named Plaintiff will receive a $5,000.00 service payment. Doc. [26-1] at 11, 26. "Service awards, or incentive payments, are routinely awarded in FLSA collective actions." *Netzel*, 2017 WL 1906955, at *7 (citing cases). "Relevant factors in deciding whether a service award to a named plaintiff is warranted include the actions a plaintiff took to protect class's interest, the degree to which class has benefitted from those actions, and the amount of time and effort a plaintiff expended in pursuing the litigation." *Id.*

The Court finds the requested award reasonable given the circumstances. According to Plaintiff's counsel, "Plaintiff has done everything she possibly could have done to protect the

class and collective's interest," and "[her] time was instrumental in reaching this common fund settlement." Doc. [26] at 22. She "took part in multiple interviews, provided records and documentation, and promptly answered questions that arose in the course of litigation." Doc. [26-2] ¶ 46. Counsel states that Plaintiff "displayed great courage and risk assigning her name to this case with the threat of future retaliation (albeit unlawful) from a perspective employer." *Id.* The Court also notes that the amount requested resembles other awards approved by courts in this Circuit. *See Johnson*, 2021 WL 2634669, at *6 (citing cases).

IV.     **The fees and costs of the settlement administrator are approved.**

The Court approves the appointment of ILYM, Inc., as the Settlement Administrator and approves its fees and costs of up to $11,167.98 to administer the settlement. As the appointed Settlement Administrator, ILYM will be responsible for executing the functions outlined in Section 2.2 of the Agreement.

V.      **The attorneys' fees and costs are approved.**

Plaintiff asks the Court to approve an award of $96,666.67 in attorneys' fees, which is one-third (33.33%) of the settlement's $290,000.00 common fund. The FLSA includes a fee-shifting provision. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). The Court reviews the proposed fee award to determine whether it is fair and reasonable. *See Melgar v. OK Foods*, 902 F.3d 775, 779 (8th Cir. 2018). "[W]here the parties have already agreed upon the fees to be paid, any required review need not be a line-by-line, hour-by-hour review of the attorneys' fees." *Id.* The court's review "requires a certain level of deference by the district court to the parties' [settlement] agreement" and "is more deferential than resolving attorneys' fees in a disputed case." *Id.* at 779-80. In assessing the reasonableness of a proposed fee award, the Court may consider factors including "(1) the amount involved and the results obtained; (2) whether the fee is fixed or contingent; (3) the novelty and difficulty of the questions; (4) the experience, reputation, and ability of the attorneys; and (5) awards in similar cases." *Keil v. Lopez*, 862 F.3d 685, 703 (8th Cir. 2017).

Upon consideration of the relevant factors, the Court finds the request for attorneys' fees to be fair and reasonable. Plaintiff's counsel took this case on a contingency basis and was able "to successfully obtain a concrete and substantial benefit—a settlement fund totaling $290,000— for a Settlement Collective of 292 similarly situated employees with relatively low dollar claims

6

(most of which are not even covered by the FLSA)." Doc. [26] at 30. Counsel's expertise litigating complex class and collective actions also supports the fee request. Finally, "the Court notes that the percentage of the settlement award sought is within the range that has been found reasonable in other FLSA settlements in this circuit." *Johnson*, 2021 WL 2634669, at *7 (citing cases).[1]

The Court also approves Plaintiff's counsel's request for reimbursement up to $15,000.00 in litigation costs. Doc. [26-1] at 11. Per counsel, at the time the Motion for Settlement Approval was filed, the costs incurred in litigating the case and obtaining the settlement totaled $14,389.89, and any unused costs will be made available for Settlement Collective Members. Docs. [26] at 25; [26-2] ¶ 45.

## VI. The Court will oversee distribution of settlement funds.

The Court will retain jurisdiction over this action for purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Settlement Agreement, including for overseeing the distribution of settlement funds. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order. The action is hereby dismissed on the merits and with prejudice, permanently barring Named Plaintiff and any participating plaintiff from commencing, prosecuting, or pursuing the claims released as part of this Settlement, whether on a class or collective action basis, or participating in any class or collective action involving such claims. If Defendant fails to comply with the Agreement, neither Named Plaintiff nor any participating plaintiff shall be barred from moving to set aside this Order or file a new lawsuit in this Court to enforce the terms of the Agreement. The Effective Date for purposes of the Agreement shall be thirty (30) days after the date of this

---

[1] In *Barbee v. Big River Steel, LLC*, the Eighth Circuit held that "judicial approval of FLSA settlements in 29 U.S.C. § 216 does not extend to review of settled attorney fees," where the parties negotiated attorneys' fees "separately and without regard to the plaintiff's FLSA claim." 927 F.3d 1024, 1027 (8th Cir. 2019). Courts in this district have found that *Barbee* does not apply in cases where, as here, attorneys' fees were calculated as a percentage of settlement funds rather than negotiated separately. *See Sandoval-Osegura v. Harvey Pallets Mgmt. Grp., LLC*, 2021 WL 2337614, at n.4 (E.D. Mo. June 8, 2021) ("The attorney fees in this case were calculated as part of the settlement fund. As such, Eighth Circuit precedent limiting the Court's authority to approve or reduce the award does not apply.") (first citing *Del Toro v. Centene Mgmt. Co.*, 2021 WL 1784368, at *2 (E.D. Mo. May 5, 2021); and then citing *Barbee*, 927 F.3d at 1027); *Del Toro*, 2021 WL 1784368, at *2 (*Barbee* did not apply to an FLSA settlement because, *inter alia*, the "the proposed attorneys' fees are calculated as a percent of settlement funds" and are therefore "necessarily intertwined with the [P]laintiffs' settlement") (citation modified). Because the fees in this matter were calculated as a percentage of the settlement fund, the Court takes the same approach and reviews the attorneys' fees for reasonableness.

Order, unless the Order is appealed within that 30-day period, in which case the Effective Date will be the date upon which the appeal is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Unopposed Motion for Settlement Approval, Doc. [26], is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Unopposed Motion for Leave to File in Excess of Page Limitation, Doc. [25], is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Joint Motion to Amend Proposed Settlement Notice, Claim Form, and Order, Doc. [30], is **GRANTED**.

Dated this 29th day of September, 2025.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE